UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TRACEY WATSON,

                               Plaintiff,

                v.

NEW YORK STATE UNITED TEACHERS UNION
  LOCAL LIBRARIANS ASSOCIATION OF THE
  BUFFALO AND ERIE COUNTY PUBLIC LIBRARY,

                          Defendant.

_____

**REPORT**
**and**
**RECOMMENDATION**
------------------------------
**DECISION**
**and**
**ORDER**

**23-CV-356-JLS(F)**

APPEARANCES:

        TRACEY WATSON, *Pro Se*
        14460 Falls of Neuse Road
        Suite 149-105
        Raleigh, North Carolina  27614

        NEW YORK STATE UNITED TEACHERS
        OFFICE OF GENERAL COUNSEL
        Attorney for Defendants
        JENNA S. BURKE, of Counsel
        270 Essjay Road
        Williamsville, New York  14221
                and
        JENNIFER NICOLE COFFEY, of Counsel
        800 Troy-Schenectady Road
        Latham, New York  12110-6488

## <u>JURISDICTION</u>

This case was referred to the undersigned by Honorable John L. Sinatra, Jr. on February 19, 2025, for all pretrial matters including preparation of a report and recommendation on dispositive motions. (Dkt. 8).  The matter is presently before the court on Defendants' motion to dismiss (Dkt. 14), filed May 1, 2025, and Plaintiff's motions for leave to file a sur-reply (Dkt. 21), filed July 11, 2025, for leave to file an amended complaint (Dkt. 23), filed July 18, 2025, for an order directing the U.S.

Marshals Service to serve Defendant with the summons and original complaint (Dkt. 25), also filed July 18, 2025.  On August 12, 2025, Plaintiff filed a motion to strike (Dkt. 28) ("Plaintiff's Motion to Strike")[1]

## BACKGROUND

On April 21, 2023, Plaintiff Tracey Watson ("Plaintiff"), proceeding *pro se*, commenced this race-based employment discrimination action asserting claims against New York State United Teachers Union Local Librarians Association of the Buffalo & Erie County Public Library,[2] filing a motion for leave to proceed *in forma pauperis* ("IFP") (Dkt. 2).  Plaintiff alleges Defendant breached its duty of fair representation ("breach of duty") in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e – 2000e-17 ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), the National Labor Relations Act ("NLRA") §§ 8(b) and 9(a), 29 U.S.C. §§ 158(b) and 159(a), and the Labor Management Relations Act ("LMRA") § 301, 29 U.S.C § 185, as well as for violations of New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL" or "§ 296") and breach of contract, and also discriminated against Plaintiff based on her race in violation of Title VII.[3]  Attached to the Complaint are exhibits A through H ("Complaint Exh(s). __").[4]  By

---

[1] Although Defendant's motion to dismiss is dispositive, as is Plaintiff's motion for leave to file an amended complaint if it is denied, Plaintiff's motions for leave to file a sur-reply and for an order directing service by the U.S. Marshal are non-dispositive.  In the interest of judicial economy and clarity, all motions are discussed in the combined Report and Recommendation and Decision and Order.

[2] Defendants are incorrectly named in the caption as New York State United Teachers Union Local Librarians Association of the Buffalo and Erie County Public Library, implying a single defendant, whereas there are actually two defendants, including New York State United Teachers, and Librarians Association of the Buffalo & Erie County Public Library.

[3] The violations alleged by Plaintiff are not asserted as separate claims for relief.

[4] Additional exhibits are attached to Complaint Exh. C.  In the interest of clarity, specific page references to the CM/ECF docket are provided for all exhibits.

letter dated March 30, 2024, Plaintiff inquired as to the status of the case. (Dkt. 5). On February 18, 2025, Plaintiff's motion for IFP status was granted (Dkt. 6), with the U.S. Marshals directed to serve copies of the summons and Complaint on Defendants.

On March 12, 2025, Jenna S. Burke, Esq. ("Burke") filed an appearance of counsel for New York State United Teachers ("NYSUT") and Librarians Association of the Buffalo & Erie County Public Library ("Union" or "Librarians Association") (together, "Defendants"). According to executed summons returned on March 17, 2025 (Dkt. 10), New York State United Teachers Union Local Librarians Association of the Buffalo and Erie County Public Library was served on March 12, 2025, with the answer due by April 2, 2025. On March 18, 2025, Jennifer N. Coffey, Esq. ("Coffey") filed an appearance of counsel for both Defendants. By letter to the undersigned dated March 18, 2025 (Dkt. 12), Burke clarified that NYSUT was served with process, and both Defendants waived personal service on March 12, 2025. Burke also requested an extension of time for Defendant to answer, which was granted on March 30, 2025 (Dkt. 13), with Defendants given until May 2, 2025 to answer.

On May 1, 2025, Defendants filed the instant motion to dismiss the Complaint for failure to state a claim (Dkt. 14) ("Defendants' Motion"), attaching the Declaration [of Burke][5] in Support of Defendants' Motion to Dismiss the Complaint (Dkt. 14-1) ("Burke Declaration"), exhibits A and B (Dkts. 14-2 and 14-3) ("Defendants' Exh(s). __"), and the Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint (Dkt. 14-4) ("Defendants' Memorandum"). On June 12, 2025, Plaintiff filed a letter (Dkt. 18) explaining that she inadvertently filed Plaintiff's Response in Opposition to Defendant's

---

[5] Unless otherwise indicated, all bracketed material has been added.

[*sic*] Motion to Dismiss ("Plaintiff's Response"), in a different case, attaching Plaintiff's Response as Exhibit A (Dkt. 18 at 4-16).  On June 20, 2025, Defendants filed the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Complaint (Dkt. 20) ("Defendants' Reply").  On July 11, 2025, Plaintiff moved for leave to file a sur-reply (Dkt. 21) ("Plaintiff's Sur-Reply Motion"), attaching as Exhibit A the putative sur-reply ("Dkt. 21 at 7-13) ("Plaintiff's Sur-Reply").  On July 15, 2025, Defendants filed Defendants' Opposition to Plaintiff's Motion for Leave to File Sur-Reply (Dkt. 22) ("Defendants' Sur-Reply Opposition").

On July 18, 2025, Plaintiff filed a motion seeking leave to file an amended and supplemental complaint (Dkt. 23) ("Plaintiff's Motion to Amend"), attaching the Motion and Memorandum of Law in Support of Plaintiff's Motion for Leave to File First Amended and Supplemental Complaint (Dkt. 23 at 4-11) ("Plaintiff's Memorandum in Support of Amendment"), the proposed First Amended and Supplemented Complaint (Dkt. 23 at 16-90) ("Proposed Amended Complaint"), and exhibits A through B (Dkts. 23-1 through 23-3) ("Plaintiff's Exh(s). __").  That same day, Plaintiff also filed a motion seeking an order directing the U.S. Marshals Service to serve Defendants with the summons and original complaint (Dkt. 25) ("Plaintiff's Motion for Service of Process"), attaching Exhibits A through D (Dkts. 25-1 through 25-5).  Plaintiff also filed on July 18, 2025, an amended summons.  (Dkt. 26).

On August 8, 2025, Defendants filed the Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File and Amended and Supplemental Complaint (Dkt. 27) ("Defendants' Response").  On August 12, 2025, Plaintiff moved to strike Defendants' Response (Dkt. 28) ("Plaintiff's Motion to Strike").  On August 25, 2025, Defendants filed

the Declaration [of Burke] in Opposition to Plaintiff's Motion to Strike (Dkt. 30) ("Burke Response Declaration"). Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion should be GRANTED; Plaintiff's Sur-Reply Motion is GRANTED with Plaintiff's Sur-Reply deemed filed *nunc pro tunc*; Plaintiff's Motion to Amend should be DENIED; Plaintiff's Motion for Service of Process is DISMISSED as moot, and Plaintiff's Motion to Strike is DENIED.

## **FACTS**[6]

On October 7, 2021, Plaintiff Tracey Watson ("Plaintiff" or "Watson"), accepted an offer of employment as a Part-Time Librarian I extended from Buffalo and Erie County Public Library ("the Library"), where Plaintiff commenced working in the Children's Department at the Central Library location on November 6, 2021.  Defendant New York State United Teachers ("NYSUT") is a federation of local labor unions including Defendant Librarians Association of the Buffalo & Erie County Public Library ("Union" or " Librarians Association") (together, "Defendants").  A collective bargaining agreement between the Library and the Union ("CBA"),[7] provides the terms and conditions for all bargaining union members.  On February 4, 2022, Plaintiff joined the Librarians Association, thereby also becoming a member of NYSUT, and union dues were then withheld from Plaintiff's paycheck beginning February 8, 2022.

On  February 15, 2022, Plaintiff was asked by her direct supervisor, Kristi Dougherty ("Dougherty"), Manager of Children's Services and Outreach of the Library

---

[6] Taken from the Complaint and the attached exhibits filed in this action.

[7] A copy of the CBA is filed as Defendant's Exh. A (Dkt. 14-2).

and the Librarians Association's Recording Secretary to attend a Record of Counsel meeting on February 17, 2022 ("the counseling meeting"). The counseling meeting was to address matters of communication matters between Plaintiff and one Lucylle Castaneda ("Castaneda"), but was not a disciplinary proceeding. In an e-mail sent February 16, 2022, Plaintiff requested Dougherty provide Union representation at the counseling meeting. Dougherty replied that she spoke with Judy Fachko ("Fachko"), Assistant Deputy Director of Human Resources for the Library, and Andrew Maines ("Maines"), the Union President, and that Union representation would be provided. Jennifer Lelinski ("Lelinski"), a Children's Library, represented the Union at the counseling meeting on February 17, 2022. According to Plaintiff, during the counseling meeting, Lelinski admitted she did not know what she was doing. The matters discussed at the counseling meeting included communications between Plaintiff and several co-workers relating to proper tone of voice, body language, and noise level. Complaint Exh. C (Dkt. 1) at 19-33. On February 18, 2022, Lelinski e-mailed Plaintiff advising Plaintiff could "reach back out to the 'employer,' Judy Fachko, Assistant Deputy Director of Human Resources" about the procedure to file a grievance regarding discrimination. Complaint ¶ 8 and Exh. G to Complaint Exh. D (Dkt. 1 at 48-49).

Sometime during the week beginning February 20, 2022, Plaintiff spoke with Maines regarding the procedure to submit a grievance and mentioned "what I [Watson] was experiencing." Complaint ¶ 9. Maines responded that Plaintiff had time to submit her grievance. On February 25, 2022, Plaintiff met with Fachko who said Plaintiff should not have been represented at the counseling meeting by Lelinski.

6

On March 14, 2022, Plaintiff submitted a grievance ("Internal Grievance")[8] to Jeannine M. Doyle ("Doyle"), then Interim Director of the Library, and Union President Maines, regarding Plaintiff's alleged race discrimination, harassment, and hostile work environment including that Plaintiff was being treated differently and unfavorably because of her race.  On March 17, 2022, Plaintiff received Doyle's decision denying the Internal Grievance and a few hours later, Plaintiff's employment at the Library was terminated.  Present at the termination meeting were Plaintiff, Dougherty, Fachko, and Maines, all of whom were aware that Plaintiff had filed the internal grievance, yet the no statement was made on behalf of the Union which also took no action in response to the termination of Plaintiff's employment.

Later on March 17, 2022, after Plaintiff's employment was terminated, Plaintiff sent an e-mail to one John Gaff ("Gaff"),[9] stating "I was wrongfully fired today," adding that Plaintiff wanted to participate in the Library Association's general membership meeting scheduled to be held the following day, March 18, 2022, via Zoom.  Complaint ¶ 13 and Complaint Exh. D (Dkt. 1 at 93-94).  In an e-mail sent March 18, 2022, Gaff responded that Plaintiff was ineligible to attend Union meetings following the termination of her employment on March 17, 2022, adding that as a probationary employee, Plaintiff could be "removed from service without cause."  Complaint ¶ 14 and Complaint Exh. E (Dkt. 1 at 95-96).  On March 21, 2022, Plaintiff sent Gaff an e-mail advising that Union dues were deducted from Plaintiff's March paycheck.  Complaint ¶ 15 and Complaint Exh. F (Dkt. 1 at 97-98).

---

[8] A copy of the Internal Grievance is filed as Complaint Exh. C (Dkt. 1 at 16-33).

[9] Gaff's position is not clear from the record but the context of Plaintiff's e-mail suggests Gaff had some position of authority with the Union.

On June 4, 2022, Plaintiff filed an EEOC Charge of Discrimination regarding the termination of her employment ("EEOC Charge"); on August 8, 2022, Plaintiff filed an Amended EEOC Charge of Discrimination ("Amended EEOC Charge").[10]  In a Position Statement dated August 24, 2022 ("Position Statement"),[11] Robert T. Reilly, Esq. ("Reilly"), General Counsel to Defendants, responded to the Amended EEOC Charge explaining that the Librarians Association is a labor organization of which Maines is the president.  Reilly explains that the Librarians Association did not breach its duty of fair representation to Plaintiff because Plaintiff, as an employee of less than two years, was not yet covered by Article 6 of the CBA pertaining to grievances and disciplinary procedures, Position Statement at 3-4 (Dkt. 1 at 102-03), and Plaintiff did not assert in the Amended EEOC Charge any factual allegations that the Librarians Association was motivated by discriminatory animus.  *Id*., at 4-5 (Dkt. 1 at 103-04).  On September 14, 2022, Plaintiff replied to the Position Statement ("Position Statement Reply").[12]  On January 23, 2023, the EEOC issued its Determination and Notice of Rights ("Right to Sue").[13]  This action followed.

## **DISCUSSION**

**1.      Motion for Service of Process**

---

[10] The court notes that no copy of the EEOC Charge is in the record, but a copy of the Amended EEOC Charge is filed as Complaint Exh. H (Dkt. 1 at 110-18).

[11] Complaint Exh. G (Dkt. 1 at 99 - 104).

[12] Complaint Exh. H at 107-08.

[13] Complaint Exh. H at 109.

On July 18, 2025, Plaintiff filed Plaintiff's Motion for Service of Process seeking an order directing the U.S. Marshals Service to serve Defendants with the summons and original complaint. The motion pertains to the fact that Plaintiff has named as Defendant New York State United Teachers Union Local Librarians Association of the Buffalo and Erie County Public Library which is the entity that the executed summons returned on March 17, 2025 indicates was served. As stated, however, the Defendants to this action include NYSUT and the Librarians Association. Accordingly, Plaintiff's Motion for Service of Process is intended to ensure both Defendants are served with process.

Plaintiff's Motion for Service of Process is, however, unnecessary because in the Notice of Appearance filed March 12, 2025, Burke indicates she is appearing as counsel for both Defendants. Dkt. 9. Similarly, in the Notice of Appearance filed March 18, 2025, Coffey indicates she is appearing as counsel for both Defendants. Dkt. 11. Further, in a letter to the undersigned dated March 18, 2025 (Dkt. 12), Burke clarified that NYSUT was served with process, and both Defendants waived personal service on March 12, 2025. Further service of process on Defendants thus is not necessary.

Plaintiff's Motion for Service of Process is DISMISSED as moot.

## 2.    Plaintiff's Sur-Reply Motion

Plaintiff's Sur-Reply Motion seeks leave to file a sur-reply in further opposition to Defendants' Motion seeking to dismiss the Complaint, attaching a copy of the proposed Plaintiffs [*sic*] Memorandum Sur Reply in Further Opposition to Defendants [*sic*] Motion to Dismiss (Dkt. 21 at 8-13) ("Plaintiff's Sur-Reply"), in which Plaintiff argues a sur-reply is necessary to permit Plaintiff to respond to arguments raised for the first time in

Defendants' Reply in further support of Defendants' Motion.  Plaintiff's Sur-Reply at 9-10.  Defendants argue in opposition to Plaintiff's Sur-Reply Motion that the requested sur-reply is unnecessary because Defendants' Reply did not raise any new arguments. Defendants' Sur-Reply Opposition at 4-5.

As relevant, the Local Rules of Civil Procedure – W.D.N.Y. provide that "[a]bsent permission of the Judge hearing the motion, sur-reply papers are not permitted."  Loc. R. Civ. P. 7(a)(6).  Further, "'whether to permit the filing of a sur-reply is entirely within the Court's discretion.'"  *Bradshaw v. Piccolo*, 772 F. Supp. 3d 331, 341 (W.D.N.Y. 2025) (quoting *Marseet v. Rochester Inst. of Tech.*, 2022 WL 2718509, at *1 (W.D.N.Y. July 13, 2022), and citing *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)).

In the instant case, Plaintiff is correct that Defendants' Memorandum, *i.e.*, Defendants' original memorandum of law filed in support of Defendants' Motion seeking dismissal of the Complaint, did not address Plaintiff's § 1981 claim.  Plaintiff's Response at 6-7; Plaintiff's Sur-Reply at 9.  Nor does Defendants' Memorandum address Plaintiff's breach of contract claim.  Plaintiff's Response at 8-9; Plaintiff's Sur-Reply at 10.[14] Nevertheless, rather than considering Defendants to have waived opposition to these claim, as Plaintiff suggests, Plaintiff's Response at 6-9, the undersigned finds it is more judicially efficient to, in the exercise of discretion, *Capaccio v. Zafuto*, 2025 WL 723207,

---

[14] Defendants' failure to separately address these claims could be attributed to the fact that the various claims in the Complaint are set forth in a single paragraph referencing the relevant statutes Plaintiff maintains were violated, rather than as separate claims.  Complaint at 2-4 (Dkt. 1 at 8-9).

at *3 n. 14 (W.D.N.Y. Mar. 6, 2025) ("The court has discretion to consider arguments presented in a party's reply." (citing *Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009) ("[T]he Second Circuit has made it abundantly clear that a district court has *discretion* to consider a belatedly-raised argument [in reply]" (emphasis original)), *aff'd,* 374 Fed.Appx. 71 (2d Cir. 2010)), consider Defendants' arguments asserted for the first time in Defendants' Reply.  Because the undersigned will consider Defendants' arguments asserted for the first time in their reply, the undersigned also, in his discretion, determines that Plaintiff should be permitted to file a sur-reply, and considers the proposed sur-reply attached to Plaintiff's Sur-Reply as filed *nunc pro tunc*.

Plaintiff's Sur-Reply Motion is GRANTED with Plaintiff's Sur-Reply considered as filed *nunc pro tunc*.

### 3.     Plaintiff's Motion to Strike

Plaintiff moves to strike[15] Defendants' Sur-Reply Opposition (Dkt. 22), filed in opposition to Plaintiff's Sur-Reply Motion, and Defendants' Response (Dkt. 27) filed in opposition to Plaintiff's Motion to Amend, arguing the papers were prepared by Reilly who has not entered an appearance on behalf of Defendants as well as that the documents were not accompanied by certificates of service indicating service was completed in accordance with Fed.R.Civ.P. 5(d)(1) ("Rule 5(d)(1)"), and Local Rule of Civil Procedure – W.D.N.Y. 5.1 ("Local Rule 5.1"), such that it is not clear that Plaintiff was properly served with Defendants' Response and Defendant's Sur-Reply

---

[15] Plaintiff's Motion to Strike also sought an extension of time to file a reply in further support of Plaintiff's Motion to Amend.  Plaintiff's Motion to Strike at 1, 3.  In a Text Order entered August 12, 2025 (Dkt. 29), the undersigned granted that portion of Plaintiff's Motion to Strike and the court thus does not further address the request for an extension of time.

Opposition.  Plaintiff's Motion to Strike at 4.  Plaintiff further argues Defendants' counsel has engaged in tactics designed to disadvantage Plaintiff as a *pro se* litigant including filing papers prepared by Reilly, failing to serve Plaintiff with papers, and raising dispositive arguments prematurely and without proper notice.  *Id*.  Defendants have not argued in opposition to these assertions.

Regarding Plaintiff's argument that certain papers were prepared by Reilly who is not an attorney of record, a plain review of such papers establishes that regardless of who prepared them, the papers were filed by Burke.  See Defendants' Sur-Reply Opposition (Dkt. 22), filed in opposition to Plaintiff's Sur-Reply Motion at 5, and Defendants' Response (Dkt. 27) filed in opposition to Plaintiff's Motion to Amend at 15.  There thus is no merit to this argument.

Insofar as Plaintiff moves to strike certain documents prepared by Reilly on behalf of Defendants because she was not separately served with such documents, Plaintiff, in moving on June 12, 2025, for electronic filing privileges (Dkt. 17) ("Electronic Filing Motion"), specifically affirmed that she had "successfully completed the Court's CM/ECF e-filing training" and "reviewed the Court's Administrative Procedures Guide for Electronic Filing," Electronic Filing Motion ¶ 1, "registered for a PACER Account" for which Plaintiff bears "sole responsibility" to ensure the related information is correct including Plaintiff's e-mail address for notifications, *id*. ¶ 3, that Plaintiff "understand[s] the technological requirements necessary to file and receive documents electronically," *id*. ¶ 4, and, significantly, that Plaintiff had "registered for electronic service."  *Id*. ¶ 5.  Relevantly, the court's Administrative Procedures Guide for Electronic Filing ("Electronic

12

Filing Guide")[16] provides that "Registered users [of CM/ECF] consent to the electronic service of all documents, and must make available an electronic mail address for service during the registration process."  Electronic Filing Guide § 2(F)(i) (Oct. 2022).

In granting Plaintiff's Electronic Filing Motion, the undersigned specifically observed his authority to grant, in his discretion, "a *pro se* litigant who demonstrates a willingness and capability to file documents electronically, permission to register to do so."  June 13, 2025 Order (Dkt. 19) at 1 (citing Electronic Filing Guide at 3).  The undersigned also observed that Plaintiff's request for permission to file electronically was based on her financial inability to pay for copies of documents and postage.  *Id*. at 1-2.  Further, Plaintiff's protests regarding Defendants' papers that were prepared by Reilly, and her failure to request any extensions of time to respond or reply to such papers based on untimely receipt, establishes that Plaintiff did, in fact, receive such papers by electronic service.  There thus is no merit to this portion of Plaintiff's Motion to Strike.

Because there is no merit to Plaintiff's argument that Defendants improperly filed papers prepared by Reilly and failed to serve Plaintiff in accordance with ("Rule 5(d)(1)"), and Local Rule of Civil Procedure – W.D.N.Y. 5.1 ("Local Rule 5.1"), there also is no merit to Plaintiff's argument that by electronically filing papers prepared by Reilly, Defendants engaged in procedural tactics designed to disadvantage Plaintiff.  Nor is there any merit to Plaintiff's argument that Defendants have included in their papers, albeit not specifically identified by Plaintiff, certain dispositive arguments that are premature at this stage of the litigation.  The court is well-versed in what can, and what

---

[16] The Electronic Filing Guide may be accessed at https://www.nywd.uscourts.gov/rules-individual-local-federal.

cannot be considered on the various motions pending before the court, rendering Plaintiff's motion to strike any such arguments unnecessary.

Accordingly, Plaintiff's Motion to Strike is DENIED.

**4.      Defendants' Motion to Dismiss**

Defendants move pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)") to dismiss the Complaint for failure to state a claim for which relief can be granted. On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's nonconclusory allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor). A complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting longstanding precedent of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). As such, the Supreme Court requires application of "a 'plausibility standard . . . .'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Twombly*, 550 U.S. at 570, and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads

14

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''"  *Id.* (quoting *Twombly*, 550 U.S. at 557)

"[A] Rule 12(b)(6) motion is addressed to the face of the pleading."  *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985).  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  In the instant case, in addition to the actual Complaint, Plaintiff attaches to the Complaint numerous exhibits which the court may consider in connection with Defendants' Motion.  Plaintiff also incorporates by reference in the Complaint the CBA, as well as the Association's By-Laws, both of which were filed as Defendants' Exhs. A (CBA) (Dkt. 14-2), and B (Association's By-Laws) (Dkt. 14-3), and are also considered in resolving Defendants' Motion.

A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]."  *Trustees of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  "While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  Applying the standard for a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) "is 'a context-specific task that requires the reviewing

15

court to draw on its judicial experience and common sense.'" *In re Amaranth Natural Gas Commodities Litigation*, 730 F.3d 170, 80 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679). Further, in light of distinct disadvantages faced by *pro se* litigants when compared to counseled litigants, submissions by *pro se* litigants are liberally construed to raise the strongest argument they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing "special solicitude" generally afforded to *pro se* litigants which is not limited to procedures but also includes pleadings (citing cases)). The Second Circuit instructs that district courts "should be particularly solicitous of *pro se* litigants who assert civil rights claims. . . ." *Id*. at 102 (citing *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003)).

In the instant case, Plaintiff's claims are asserted pursuant to 42 U.S.C. § 1983 ("§ 1983"), which permits imposing civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States. *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983). Section 1983, however, " 'is not itself a source of substantive rights.'" *Id.* (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred' . . . ." *Id.* To succeed on a § 1983 claim, a plaintiff must establish the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).

16

Plaintiff alleges Defendants engaged in discrimination and retaliation against her with regard to the grievance process by refusing to address the Internal Grievance complaining about race-based employment discrimination, harassment, retaliation, and disparate treatment Plaintiff claims to have encountered throughout her tenure at the Library from October 7, 2021 until March 17, 2022, and with regard to the termination of Plaintiff's employment by failing to represent Plaintiff at the meeting at which her employment at the library was terminated or to otherwise challenge Plaintiff's termination.  Specifically asserted are claims for violations of several federal laws including Title VII, § 1981, the NLRA, and the LMRA, as well as for violations of NYSHRL, and breach of contract, *i.e.*, the CBA.  The Complaint thus is examined to determine whether any such claim is plausibly asserted.

### A.    LMRA and NLRA

"Under federal labor law, an employee may bring a complaint against her union and/or her employer alleging (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing her grievance against the employer." *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d 110, 113 (2d Cir. 1997) (citing *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 163–64 (1983), and *Vaca v. Sipes,* 386 U.S. 171, 184–86 (1967)).  "Section 301 of the Labor Management Relations Act, 1947 (the "LMRA"), 29 U.S.C. § 185, governs the employer's duty to honor the collective bargaining agreement, and the duty of fair representation is implied under the scheme of the National Labor Relations Act (the "NLRA")."  *Id*. at 113-14 (citing *DelCostello,* 462 U.S. at 164, and *Price v. International Union, United Auto. Aerospace & Agric. Implement*

17

*Workers,* 795 F.2d 1128, 1134 (2d Cir.1986) (union's duty of fair representation is implied from § 9(a) of the NLRA, 29 U.S.C. § 159(a), specifically)).  Accordingly, "[s]uch a suit, [referred to as a "hybrid action"] as a formal matter, comprises two causes of action.  The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement.  The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act."  *DelCostello*, 462 U.S. at 165.

Although the employee may choose to sue only the employer or the union, "'the two claims are inextricably interdependent'" and the employee must allege violations on the part of both the employer and union.  *DelCostello*, 462 U.S. at 165 (quoting *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66 (1981) (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-71 (1976)).  The action thus is considered a "hybrid § 301/fair representation claim" under the collective bargaining agreement.  *Id*. (citing *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 702 (1966)).  Accordingly, an employee may bring claims under the federal labor statutes, against her union and/or her employer, if: (1) the employer breached a collective bargaining agreement, and/or (2) the union breached its duty of fair representation in redressing the employee's grievances against the employer.  *White v. White Rose Food*, 128 F.3d 110, 113-14 (2d Cir. 1997) (the duty of fair representation arises under the NLRA and governs a union's obligations in negotiating and enforcing collective bargaining agreements whereas § 301 of the LMRA governs breaches and interpretations of collective bargaining agreements).  In the instant case, Plaintiff sues only the Union and NYSUT, but not the

18

Library, her former employer.  Accordingly, Plaintiff's federal labor law claims against Defendants for breach of the duty are pursuant to the NLRA.

To state a duty of fair representation claim, Plaintiff must plausibly allege two elements: first, that Defendants acted in a manner that is arbitrary, discriminatory, or in bad faith; and second, "a causal connection between the union's wrongful conduct and [her] injuries." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010)), *aff'd sub nom. Williams v. MTA Metro N. R.R.*, 2022 WL 1053265 (2d Cir. 2022).  "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal citation omitted).  To breach the duty of fair representation, the test is whether the union's conduct or omission is "so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *N.L.R.B. v. Local 282, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 740 F.2d 141, 147 (2d Cir. 1984).  Further, "[a] showing of '[b]ad faith requires a showing of fraudulent, deceitful, or dishonest action.'" *White*, 237 F.3d 174, 179 (2d Cir. 2001) (quoting *Sim v. New York Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999)).  Neither conclusory allegations nor a union's "mere negligence" in enforcing a collective bargaining agreement is sufficient to state a claim for breach of a union's duty of fair representation.  *Mancus v. The Pierre Hotel*, 45 Fed.Appx. 76, 77 (2d Cir. 2002)).  Here, none of Plaintiff's allegations state a plausible claim against Defendants for breach of the duty of fair representation.

In particular, Plaintiff complains that the Union breached its duty of fair representation by assigning to represent Plaintiff Lelinski "who admitted during the [counseling meeting that] she did not know what she was doing."  Complaint ¶ 7 (Dkt. 1 at 7).  According to Plaintiff, not only was Lelinski, at the time of the counseling meeting, a new hire, but Lelinski, and thus the Union, said nothing during the counseling meeting, let alone to "defend [Plaintiff's] interest or rights."  Amended EEOC Charge (Complaint Exh H), Dkt. 1 at 116.  Plaintiff also maintains Defendants failed to advocate on her behalf in connection with the termination of Plaintiff's employment.  Complaint ¶¶ 12-14 (Dkt. 1 at 8).  These allegations fail to state a plausible claim for breach of the duty of fair representation.

As Dougherty repeatedly advised Plaintiff, the counseling meeting was not a disciplinary proceeding.  Dkt. 1 at 37, 44, 46.  Significantly, the CBA does not provide for Union representation at counseling meetings, *see* Defendants' Exh. A (Dkt. 14-2) (*passim*), and Plaintiff does not argue otherwise.  Further, the termination of Plaintiff's employment was "without cause," rather than for disciplinary reasons.  Complaint Exh. E (Dkt. 1 at 95-96).  Even assuming, *arguendo*, that the counseling meeting and the termination of Plaintiff's employment were disciplinary proceedings, Defendants' duty to represent Plaintiff with regard to grievances and disciplinary proceedings is governed by Article 6 of the CBA.  Dkt. 14-2 at 41-47 (CBA Article 6 setting forth grievance and disciplinary procedures and the Union's responsibilities to Union members with regard to both).  The CBA, however, plainly states that part-time librarians, the position Plaintiff held throughout her tenure with the Library, are not entitled to "any benefits provided by any of the articles of this [Collective Bargaining] Agreement except . . . (i) They shall be

20

covered by Article 6 of this Agreement upon completion of two (2) years of service[, and] (ii) They shall be entitled to the health insurance offering contained in [Article] 3.2.1.1(e)." CBA § 3.4 (Dkt. 14-2 at 34). Because Plaintiff's employment as a part-time librarian was for fewer than six months, *see* Facts, *supra*, at 5, 7, Plaintiff was not entitled to Union representation at the counseling meeting even if the meeting were a disciplinary proceeding, or with regard to the termination of her employment. Where a union's failure to provide representation is permitted under a CBA, no duty of fair representation is breached. *See Jordan v. Viacom Outdoor Group*, 475 F.Supp.2d 440, 445 (S.D.N.Y. 2007) (holding a union is not required to pursue every grievance and so long as the union's decision not to pursue a grievance is reasonable and not based on arbitrary conduct, discrimination, or bad faith, the decision does not breach the duty of fair representation). Plaintiff thus has not stated a plausible violation of the duty to fair representation under the NLRA based on a failure to provide Plaintiff with effective representation at the counseling meeting.

Nor does Plaintiff's assertion, Complaint ¶¶ 11-12 (Dkt. 1 at 7-8), that the Union breached its duty of fair representation by failing to pursue Plaintiff's Internal Grievance to arbitration plausibly state a claim. So long as a union's decision not to pursue arbitration was not arbitrary and was made in good faith, the union's decision is accorded non-actionable discretion. *See O'Neill*, 499 U.S. at 78. Further, although "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, . . . the individual [does not have] an absolute right to have h[er] grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." *Vaca*, 386 U.S. at 184 - 86.

21

Here, the Union's responsibility to provide Plaintiff with representation in connection with the Internal Grievance is provided under Article 6 of the CBA which did not apply to Plaintiff because she was employed by the Library for fewer than the requisite two years.  CBA § 3.4.  That Maines, as the Union's president, may have erroneously implied Plaintiff could file a grievance, *see* Complaint ¶ 9 (Dkt. 1 at 7), cannot create an obligation to pursue the grievance to arbitration contrary to the express terms of the CBA, and Plaintiff does not so contend.  Accordingly, the allegations of the Complaint, taken as true, fail to plausibly establish that Defendants' decision not to pursue Plaintiff's Internal Grievance to arbitration was arbitrary and not made in good faith.  The Complaint thus fails to plausibly allege a violation of Defendants' duty of fair representation based on the Union's failure to pursue Plaintiff's Internal Grievance.

Although not separately alleged as a claim in the Complaint, Plaintiff, Plaintiff attached to the Internal Grievance a copy of e-mails exchanged on March 3, 2022 between Plaintiff and one Ashley Ligammari, Library Personnel Clerk, Human Resources ("Ligammari"), regarding whether Plaintiff was eligible to receive a $ 750 signing bonus provided for in the CBA.  Internal Grievance Exh. S (Dkt. 1 at 85-87).  Ligammari responded that the signing bonus was only available to employees in active status as of October 21, 2021, the date of the CBA's ratification by the Library's Board of Trustees, and that because Plaintiff's official start date of her employment with the Library was November 6, 2021, Plaintiff was not eligible for the signing bonus.  *Id*.  Plaintiff then, on March 3, 2022, e-mailed Maines inquiring when the CBA for the years 2021, 2022, 2023 and 2024 was ratified.  Internal Grievance Exh. T (Dkt. 1 at 90).

22

Maines replied that same day that the CBA "was signed into effect on 2/2/2022 and the initial tentative agreement was signed in Fall 2021.  The contract is retroactive to 1/1/2021 with the previous contract in effect until the new one was signed."  *Id*.  In the Amended EEOC Charge filed against Defendants, Plaintiff asserted that she was denied a "signing bonus" that was provided to white employees of the Library.  Amended EEOC Charge, Dkt. 1 at 111.  Defendants argue that insofar as Plaintiff seeks to allege such claim here, because the terms of the CBA establish that Plaintiff was not eligible for the signing bonus, Defendants did not breach the duty of fair representation to Plaintiff by failing to pursue the issue to arbitration.  Defendants' Memorandum at 5, 9-10.

As Defendants argue, Defendants' Memorandum at 5, 9-10, the CBA provides that "upon ratification" of the CBA, "all Librarians employed *at the time of the vote*" shall be entitled to a one time, lump-sum signing bonus.  CBA § 3.1.1 (italics added).  The signing bonus for part-time librarians was $ 750.  *Id*.  Significantly, Plaintiff does not dispute Ligammara's statement, corroborated by Maines, that the CBA was ratified on October 21, 2021, *i.e.*, before Plaintiff was in active status.  Moreover, because Plaintiff had not yet been employed for two years, the benefits provided under Article 6 of the CBA requiring the Union to pursue grievances to arbitration were not yet available to Plaintiff.  Accordingly, Plaintiff has not plausibly alleged Defendants breached their duty of fair representation in connection with Plaintiff's failure to receive a signing bonus.

Nor were Defendants required to provide Plaintiff with representation in connection with the Library's termination of Plaintiff's employment.  First, it is not clear from the record that Plaintiff's termination was for cause such that the termination could

be construed as a disciplinary proceeding.  Significantly, Plaintiff does not dispute Gaff's statement to Plaintiff on March 18, 2022, that her employment was terminated without cause.  *See* Complaint Exh. E (Dkt. 1 at 95-96).  Even if Plaintiff's termination was for cause, because Plaintiff was employed by the Library for fewer than two years, the Union was not required to represent Plaintiff in connection with the termination of her employment.  *See* Defendants' Exh. A, CBA § 3.4 (Dkt. 14-2 at 26-27).  Plaintiff thus fails to plausibly state that Defendants breached their duty of fair representation in connection with the termination of Plaintiff's employment.

Defendants' Motion thus should be GRANTED insofar as Plaintiff fails to state any plausible claim for relief under the LMRA or the NLRA.

## B.      Title VII, § 1981, and NYSHRL

Plaintiff also asserts her breach of the duty of fair representation claims pursuant to Title VII, § 1981, and NYSHRL.  "To bring a Title VII discrimination claim against a union concerning the manner in which the union handled a member's workplace complaints, the plaintiff must demonstrate that (1) the Union breached its duty of fair representation to plaintiff; and (2) that the Union's conduct was motivated by animus toward the plaintiff[']s protected status."  *Dillard v. SEIU Loc. 32BJ*, 2015 WL 6913944, at *4 (S.D.N.Y. Nov. 6, 2015).  *See also Blaizin v. Caldor Store # 38*, 1998 WL 420775, at * (S.D.N.Y. July 27, 1998) ("It is well established that a duty of fair representation claim can fall within Title VII if a union allowed the breach to go unrepaired and plaintiff can show that the Union's actions were motivated by discriminatory animus.").  Further, "where a plaintiff claims that a union violated Title VII based on its failure to represent a member, courts in this Circuit generally incorporate the duty of fair representation as

24

one of the elements of the alleged Title VII violation." *Beachum v. AWISCO New York*, 785 F. Supp. 2d 84, 103 (S.D.N.Y. 2011) (citation and quotation marks omitted), *aff'd sub nom. Beachum v. AWISCO New York Corp.*, 459 Fed.Appx. 58 (2d Cir. 2012).  *See also Ross v. Commc'n Workers of Am., Local 1110*, 1995 WL 351462, at *7 (S.D.N.Y. June 9, 1995) ("[T]he issue of whether a union breached its [duty of fair representation] is necessarily involved in determining the validity of . . . a Title VII claim in which an employee complains that her union failed properly to press her grievance against her employer.").

In the instant case, it is undisputed that Plaintiff's protected status is as a Black woman.  Nevertheless, not only has Plaintiff failed to allege a breach of Defendants' duty of fair representation in connection with the counseling meeting, the Internal Grievance including the signing bonus, and the termination of Plaintiff's employment, *see* Discussion, *supra*, at 20-24, but the record is devoid of any allegations that Defendants' actions were motivated by racially-discriminatory animus, requiring Plaintiff's Title VII breach of duty claim be dismissed for failure to state a claim. Moreover, insofar as some courts have applied the same Title VII standard for discrimination claims brought against a union pursuant to § 1981, *McIntyre v. Longwood Cent. Sch. Dist.*, 658 F. Supp. 2d 400, 422 (E.D.N.Y. 2009), *aff'd*, 380 Fed.Appx. 44 (2d Cir. 2010), as well as NYSHRL, *Cano*, 2021 WL 4927166, at * 13, Plaintiff's breach of duty claims asserted under § 1981 and NYSHRL should be dismissed for the same reasons.

Alternatively, Plaintiff's breach of the duty claim asserted under § 1981 should be dismissed because Plaintiff has not alleged a violation of any right secured to ~~him~~ her

25

under § 1981.  Specifically, "[t]o establish a § 1981 claim, a plaintiff . . . must show: (1) that she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981."  *Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 261 (2d Cir. 2000) (citing cases).  The activities enumerated in § 1981 include the right "to make and enforce contracts, to sue, be parties [to lawsuits], give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."  42 U.S.C.A. § 1981(a).  Here, Plaintiff asserts Defendants, by failing to represent Plaintiff in connection with the counseling meeting, the Internal Grievance, the termination of Plaintiff's employment, and signing bonus, interfered with Plaintiff's contractual rights under the CBA.  This argument fails, however, because, as discussed, Discussion, *supra*, at 20-24, the CBA's provisions regarding the signing bonus, CBA § 3.1.1, arbitration of grievances, CBA §§ 6.1-6.3, and, disciplinary proceedings (insofar as the counseling meeting and the termination of Plaintiff's employment can be construed as disciplinary in nature), CBA §§ 6.4, did not apply to Plaintiff during the tenure of her employment with the Library.  Accordingly, Plaintiff has not alleged any facts plausibly supporting her § 1981 claim.

As an alternative regarding Plaintiff's breach of duty claim asserted under NYSHRL, although not addressed by the Second Circuit, district courts within the Second Circuit have held that "[s]ate law claims are preempted if they arise out of or are encompassed by a breach of the duty of fair representation."  *Agosto v. Corr. Officers Benev. Ass'n*, 107 F. Supp. 2d 294, 310 (S.D.N.Y. 2000) (granting defendant labor union summary judgment on the plaintiff's breach of duty of fair representation claim

asserted under NYSHRL).  *See also Daniel v. ABM Industries, Inc.*, 2017 WL 1216594, at * 6 (S.D.N.Y. Mar. 31, 2017) ("In the Second Circuit, 'the weight of well-reasoned authority . . . finds that claims against a union . . . under the [NYSHRL] . . . are subsumed by the duty of fair representation when the gist of the claim is the failure to represent the plaintiff in a fair and non-discriminatory manner." (citing *Morillo v. Grand Hyatt N.Y.*, 2014 WL 3498663, at *4 (S.D.N.Y. July 10, 2014))).

As a further alternative, should the District Judge agree with the undersigned's recommendation that all the federal claims over which the district court has original jurisdiction should be dismissed for failure to state a claim, then the court, pursuant to 28 U.S.C. § 1367(c)(3) (providing for supplemental jurisdiction over pendent state law claims) should also refrain from exercising supplemental jurisdiction over the NYSHRL claim.  *See Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 726 (2d Cir. 2013) ("'[I]in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" (quoting *Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 306 (2d Cir.2003)).

Accordingly, Defendants' Motion should be GRANTED as to Plaintiff's claims asserting Defendants breached their duty of fair representation in violation of Title VII, § 1981, and NYSHRL.

27

### C.     Breach of Contract

Although "[o]rdinarily, an employee's only claim against a union for violation of the terms of a collective bargaining agreement is for a violation of the duty of fair representation," *McKoy v. Potter*, 2002 WL 31028691, at *11 (S.D.N.Y. Sept. 11, 2002) (citing *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-75 (1990), in limited circumstances, an employee may state a claim for a violation of a collective bargaining agreement pursuant to the third-party benefit doctrine. *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 861, 864-65 (1987).  To state a plausible claim against a union for breach of contract, the employee "must be able to point to language in the collective bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees." *Rawson*, 495 U.S. at 374.

In the instant case, Plaintiff maintains that following the termination of her employment, she was wrongfully denied the opportunity to attend the Association's general membership meeting on March 18, 2022.  Complaint ¶ 14 (Dkt. 1 at 8).  The Constitution and Bylaws of the Librarians Association of the Buffalo and Erie County Public Library ("Bylaws")[17] provides for general membership meetings of the Librarians Association to be held at least twice a year.  Bylaws Art. VII (Dkt. 14-2 at 5). Membership in the Librarians Association, however, is limited to, as relevant here, part-time librarians who are employed by the Library.  Bylaws Art. IV § 1.  Because Plaintiff was not employed by the Library on March 18, 2022, her employment having been terminated the previous day, Plaintiff was not a part-time librarian employed by the Library on March 18, 2022 and, thus, was not eligible to attend the general membership

---

[17] Filed as Defendants' Exh. B (Dkt. 14-2), and incorporating by reference the CBA.  *See* Bylaws Art. XI (Dkt. 14-3 at 7).

28

meeting on that date.  Significantly, Plaintiff fails to indicate any provision in the CBA or the Bylaws that would permit Plaintiff to attend the Librarian Association's general membership meeting on March 18, 2022, when Plaintiff was no longer a Library employee.  Plaintiff thus has failed to plausibly state a breach of contract claim based on Defendants' denial of the request to attend the Librarian Association's general membership meeting on March 18, 2022.

Defendants' Motion should be GRANTED as to Plaintiff's breach of contract claim.

5.    **Plaintiff's Motion to Amend**

Plaintiff moves for leave to file an amended complaint to assert additional factual allegations, to add as Defendants Lelinski and Maines ("Proposed Defendants"), to assert claims for disparate treatment pursuant to Title VII against Defendants, Proposed Amended Complaint, Dkt. 23 ¶¶ 128-133 ("Proposed First Claim"), retaliation under Title VII against Defendants, *id*. ¶¶ 134-40 ("Proposed Second Claim"), race discrimination in violation of § 1981 against Defendants and Proposed Defendants, *id*. ¶¶ 141-48 ("Proposed Third Claim"), retaliation in violation of § 1981 against Defendants and Proposed Defendants, *id*. ¶¶ 149-55 ("Proposed Fourth Claim"), race-based interference with contractual representational rights in violation of § 1981 against Defendants and Proposed Defendants, *id*. ¶¶ 156-62 ("Proposed Fifth Claim"), and common New York law breach of contract claim against Defendants, *id*. ¶¶ 163-68 ("Proposed Sixth Claim").  Defendants argue in opposition to Plaintiff's Motion to Amend that the proposed amendments should be disallowed as futile.  Defendants' Response at 7-15.

29

"The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought." *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021), *cert. denied*, —— U.S. —— –, 142 S. Ct. 1112, (2022). Generally, a motion to amend pleadings is governed by Rule 15(a) which, as relevant, provides "[t]he court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). *See Foman v. Davis*, 371 U.S. 178, 181 (1962) (leave to file an amended complaint "shall be freely given when justice so requires."). "[A] plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission." *Sacerdote*, 9 F.4th at 115 (citing Fed.R.Civ.P. 15(a)(1) (permitting a plaintiff to amend as of right within 21 days after serving the initial complaint and within 21 days after answer)). "After that period ends - either upon expiration of a specified period in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A) — the plaintiff must move the court for leave to amend, but the court should grant such leave "freely . . . when justice so requires" pursuant to Rule 15(a)(2)." *Id.* "This is a 'liberal' and 'permissive' standard, and the only 'grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'" *Id.* (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)). "The period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up a

30

showing of the 'good cause' that is required to modify a scheduling order under Rule 16(b)(4)." *Id.* (citing *Parker v. Columbia Pictures*, 204 F.3d 326, 340 (2d Cir. 2000)).

In the instant case, although the filing of a motion to dismiss permits a plaintiff to file an amended pleading without leave of the court, Rule 15(a)(1)(B), such filing as a matter of course must take place within 21 days of being served with a motion to dismiss. *Id*. Because here, Plaintiff did not move to amend for more than 21 days after the filing of Defendants' Motion, Plaintiff needs to receive leave of the court to amend.

Leave to amend is particularly inappropriate where "the problem with [plaintiff's] cause[ ] of action is substantive." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). In the instant case, insofar as Plaintiff seeks to add claims or to clarify claims that Defendants breached the duty of fair representation under the CBA, no such claim lies because the provisions for that duty is found in Article 6 of the CBA which, as discussed above, does not apply to Library employees of less than two years. Accordingly, Plaintiff's Motion to Amend should be DENIED insofar as Plaintiff seeks to add claims or additional factual allegations pertaining to a breach of duty by Defendants or Proposed Defendants.

Preliminarily, inasmuch as Plaintiff's Motion to Amend seeks to add claims pursuant to § 1981 against Lelinski and Maines, *i.e.*, Proposed Defendants, in their official capacities as Union representatives, it is well-established that "union agents" are not personally liable for acts performed on the union's behalf. *See Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 247-49 (1962), *overruled in part on other grounds by Boys Markets, Inc. v. Retail Clerk's Union. Local 770,* 398 U.S. 235, 241 (1970). It is also well-settled in this circuit that individual union members are specifically immune from

31

suits for breach of the duty of fair representation, *Morris v. Local 816,* 169 F.3d 782, 784 (2d Cir.1999), which is a prerequisite to liability under § 1981.  *Beachum*, 785 F. Supp. 2d at 103.  Because Union officers and employees are not individually liable for acts performed as representatives of the Union, Plaintiff has no recourse against Lelinski or Maines for a claim of breach of fair representation.  Further, because individual defendants are not subject to liability under Title VII, *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000), there can be no Title VII liability against either Lelinski or Maines.

In this case, Plaintiff seeks to allege she was subjected to disparate treatment on the basis of her race in violation of Title VII against Defendants, First Proposed Claim, and in violation of § 1981 against Defendants and Proposed Defendants, Third Proposed Claim, when she was denied full Union protection in connection with the counseling meeting, the denial of a signing bonus, Plaintiff's Internal Grievance and the termination of Plaintiff's employment.  As discussed above in connection with Plaintiff's current claims in the original Complaint, however, Discussion, *supra*, at 20-24, the viability of these claims depends on the applicability of the CBA to Plaintiff's employment situation, but the CBA's provisions regarding the signing bonus, CBA § 3.1.1, arbitration of grievances, CBA §§ 6.1-6.3, and, disciplinary proceedings (insofar as the counseling meeting and the termination of Plaintiff's employment can be construed as disciplinary in nature), CBA §§ 6.4, did not apply to Plaintiff during the tenure of her employment with the Library.  Accordingly, the Proposed First and Third Claims are futile.

As regards Plaintiff's attempt to allege Defendants or Proposed Defendants retaliated against her for filing the Internal Grievance in violation of Title VII (Proposed

32

Second Claim) and § 1981 (Proposed Fourth Claim), unions are forbidden under both Title VII and § 1981 from taking such retaliatory action.  *See Ferguson v. New Venture Gear, Inc.*, 2009 WL 2823892, at * 7 & n. 4 (N.D.N.Y. Aug. 31, 2009) (analyzing Title VII and § 1981 retaliation claims asserted against the defendant union pursuant to the same standard); *Nweke v. Prudential Ins. Co. of Am.*, 25 F.Supp.2d 203, 230 (S.D.N.Y. 1998) (citing *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991)).  Generally, a retaliation claim against a union requires a plaintiff show (1) participation in protected activity known to the defendant union, (2) an employment action disadvantaging the person engaged in the protected activity, and (3) a causal connection between the protected activity and the adverse employment action.  *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991).  Further, "[a] dispute with the union arises only after the employee becomes dissatisfied with the extent of representation by the union in the resolution of the dispute."  *Id*. at 208.

Here, Article 6 of the CBA provides that Defendants were not required to provide Plaintiff with any representation in connection with the Internal Grievance given that Plaintiff was an employee of less than two years, or to challenge the termination of Plaintiff's employment or otherwise advocate on Plaintiff's behalf in connection with any disciplinary proceedings.  Neither Defendants nor Proposed Defendants thus ever undertook to represent Plaintiff in connection with any dispute.  Accordingly, Plaintiff could not become dissatisfied with any Union representation and Plaintiff thus cannot allege a retaliation claim under Title VII or § 1981 against Defendants or Proposed Defendants for failing to pursue the Internal Grievance to arbitration or to represent Plaintiff in connection with the termination of Plaintiff's employment.

33

Insofar as Plaintiff seeks to allege race-based contractual interference in violation of § 1981 against Defendants and Proposed Defendants, Proposed Fifth Claim, as discussed, Discussion, *supra*, at 20-24, the CBA's provisions regarding the signing bonus, CBA § 3.1.1, arbitration of grievances, CBA §§ 6.1-6.3, and, disciplinary proceedings (insofar as the counseling meeting and the termination of Plaintiff's employment can be construed as disciplinary in nature), CBA §§ 6.4, did not apply to Plaintiff during the tenure of her employment with the Library. Nor can Plaintiff assert a common law breach of contract claim under New York law, Proposed Sixth Claim, against Defendants. Again, the only contract at issue is the CBA, and the only provisions of the CBA under which Plaintiff could possibly allege a breach of contract claim are those governing the signing bonus, CBA § 3.1.1, arbitration of grievances, CBA §§ 6.1 – 6.3, and representation in connection with disciplinary proceedings. CBA ¶ 6.4, which do not apply to Plaintiff's situation. *See* Discussion, *supra*, at 20-24. Accordingly, permitting Plaintiff to file an amended complaint to assert contractual interference in violation of § 1981 against Defendants and Proposed Defendants, as well as a common law breach of contract claim against Defendants is futile.

In short, substantive issues prevent Plaintiff from asserting against Defendants and Proposed Defendants any breach of the duty of fair representation claims, discrimination claims, or retaliation claims under Title VII or § 1981, as well as any § 1981 interference with contractual rights claims rendering granting leave to amend particularly inappropriate in this case. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Plaintiff's Motion to Amend should, therefore, be DENIED with prejudice.

# **CONCLUSION**

Based on the foregoing, Defendants' Motion (Dkt. 14) should be GRANTED;

Plaintiff's Sur-Reply Motion (Dkt. 21) is GRANTED with Plaintiff's Sur-Reply deemed

filed *nunc pro tunc*; Plaintiff's Motion to Amend (Dkt. 23) should be DENIED with

prejudice; Plaintiff's Motion for Service of Process (Dkt. 25) is DISMISSED as moot, and

Plaintiff's Motion to Strike (Dkt. 28) is DENIED.

SO ORDERED, as to Plaintiff's Sur-Reply
Motion, Plaintiff's Motion for Service of
Process, and Plaintiff's Motion to Strike.

/s/ *Leslie G. Foschio*

_____
      LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

             Respectfully submitted, as to Defendants' Motion
             And Plaintiff's Motion to Amend,

                   /s/ *Leslie G. Foschio*

             _____
                  LESLIE G. FOSCHIO
            UNITED STATES MAGISTRATE JUDGE

DATED:     December 23, 2025
            Buffalo, New York

**Any appeal of this Decision and Order must be taken by filing written objection with the Clerk of Court <u>not later than 14 days</u> after service of this Decision and Order in accordance with Fed.R.Civ.P. 72(a).**

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

<u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u>

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the Plaintiff and to the attorneys for the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      December 23, 2025
               Buffalo, New York

36